**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CALVIN LEE CRADDOCK                                      CIVIL ACTION

VERSUS                                                   NO. 10-2044

N. BURL CAIN, WARDEN                                     SECTION "N"(5)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court finds that a federal evidentiary hearing is unnecessary. *See* 28 U.S.C. §2254(e)(2).[1] For the following reasons, the Court recommends that the instant petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE.**

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

### I. Procedural History

Petitioner, Calvin Lee Craddock, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.   On June 8, 2005, Craddock was charged by grand jury indictment with aggravated rape in violation of Louisiana Revised Statute 14:42.[2]  Craddock pleaded not guilty.[3]   Following a three-day jury trial, he was found guilty on September 13, 2006.   On October 11, 2006, he was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[4]  The trial court denied his motion for new trial and motion for post-verdict judgment of acquittal.[5]

Craddock appealed his conviction and sentence, asserting two claims: (1) the evidence was insufficient to support the verdict (raised by counsel); and (2) the trial court erred in denying his motion for a speedy trial (raised by *pro se* supplemental brief).[6]   On June 8, 2007, the Louisiana First Circuit Court of Appeal affirmed his conviction.[7]  The Louisiana Supreme

---

[2]State Rec., Vol. 1 of 4, Indictment by the St. Tammany Parish Grand Jury.

[3]State Rec., Vol. 1 of 4, Minutes (June 29, 2005).

[4]State Rec., Vol. 3 of 4, Sentencing Transcript, p. 3.

[5]*Id*.

[6]State Rec., Vol. 4 of 4 (copies of his pleadings filed in connection with his direct appeal are also attached as part of Exhibit #3 to his federal petition at Rec. Doc. No. 6) .

[7]*Id*., *State v. Craddock*, 07-0123 (La. App. 1st Cir. 6/8/07).

2

Court denied relief on January 11, 2008.[8]  Craddock did not seek review to the United States Supreme Court.

On January 6, 2009, Craddock filed an application for post-conviction relief in the state district court.[9]  In that application, he raised the following claims for relief:  (1) the trial court erroneously allowed "hearsay and *Bruton* evidence" to be admitted and trial counsel failed to introduce into evidence favorable statements from a deceased witness; (2) trial counsel failed to interview the victim's mother and call her as a witness at trial; (3) trial counsel failed to secure expert testimony; (4) appellate counsel failed to argue "plain errors on the face of the record"; (5) trial counsel and appellate counsel failed to argue that the State, in order to "gain a conviction," introduced "elements and facts" which were not contained in the indictment; (6) trial counsel failed to argue the issues of "flaws in [the] indictment, "constructive amendment," "duplicity," "double jeopardy," and "improper jury instruction"; and (7) trial and appellate

---

[8]*State v. Craddock*, 2007-1466 (La. 1/11/08), 972 So.2d 1161.

[9]State Rec., Vol. 4 of 4, Uniform Application for Post-Conviction Relief signed and dated January 6, 2009 (copy also attached as Exhibit 1 to his Petition at Rec. Doc. No. 6). Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

counsel "failed to challenge prosecutorial misconduct." On February 3, 2009, the state district court denied relief on the merits.[10]  The Louisiana First Circuit denied relief without stated reasons on June 22, 2009.[11]  The Louisiana Supreme Court denied his related writ application on May 21, 2010.[12]

On July 13, 2010, Craddock filed his federal application for *habeas corpus* relief.[13]  In his application, Craddock raised eight claims for relief:  (1) the evidence was insufficient to support the verdict; (2) the jury's verdict was not unanimous; (3) the trial court erred in denying his motion for a speedy trial; (4) the trial court erred in failing to rule on his motion to quash; (5) the trial court erred in denying his notice to subpoena witnesses; (6) the State improperly referred to "other crimes evidence" in closing argument to secure a conviction; (7) counsel was ineffective in failing to successfully introduce favorable statements from a deceased witness; and (8) the State failed to identify the victim in the indictment.  On February 24, 2011, this federal petition was dismissed without prejudice based on Craddock's failure

---

[10]State Rec., Vol. 4 of 4, *Craddock v. Cain*, 397650 "D" (District Court Order of February 3, 2009  dismissing application for post-conviction relief).

[11]State Rec., Vol. 4 of 4, *State v. Craddock*, 2009-KW-415 (La. App. 1st Cir. 6/22/09).

[12]*State ex rel. Craddock v. State*, 2009-1693 (La. 5/21/10), 36 So.3d 221.

[13]Rec. Doc. No. 6, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Petitioner signed the petition on July 13, 2010, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing.

to exhaust his state court remedies on all claims for relief.[14]

About one year later, Craddock sought to reopen his case.  He filed an amended petition, asserting his claims were now exhausted.[15]  The Court ordered the case reopened and vacated its earlier Judgment.[16]  The Court referred the matter to the undersigned for preparation of a Report and Recommendation addressing the merits of his previously exhausted claims (1, 3 and 7) and for review of petitioner's subsequent filings to determine whether the claims previously found to be unexhausted are eligible for federal judicial review.

In his amended federal application, Craddock reasserts the following previously unexhausted claims: (4) the trial court erred in failing to rule on his motion to quash; (5)  the trial court erred in denying his notice to subpoena witnesses; and (8) the indictment was invalid and fatally defective for failure to identify the victim.   As the State correctly notes, Craddock neither reasserts Claims 2 or 6, nor argues that either claim has been exhausted. Therefore, Claims 2 and 6, previously determined to be unexhausted, are not properly before this Court and will not be considered herein.   The State concedes that in addition to the claims previously found to be exhausted, petitioner has now fully exhausted claims 4, 5, and 8, and that these claims are timely.

---

[14]Rec. Doc. No. 27.  This Court determined that only Claims 1, 3 and 7 were fully exhausted in the state courts.

[15]Rec. Doc. Nos. 29, 30.

[16]Rec. Doc. No. 33.

## II. Analysis

**A.   *Procedurally defaulted claims* - (4) no ruling on motion to quash and (5) denial of motion to subpoena witnesses**

The State argues that Craddock's claims 4, 5 and 8 are procedurally barred. Accordingly, the Court will consider those arguments first.

Federal *habeas* relief may be precluded on any claim a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir.2001) *(citations omitted)*.  The last reasoned state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

On April 26, 2011, Craddock raised each of these claims in his third state-court post-

conviction relief application to the state district court.[17]   On May 4, 2011, the state district court dismissed his application based on Louisiana Code of Criminal Procedure articles 929, 930.4 (repetitive), presumably under subsection (E), and 930.8 (time-bar).[18]   The Louisiana First Circuit denied petitioner's related writ application without stated reasons.[19]   The Louisiana Supreme Court likewise denied petitioner's related writ without additional reasons.[20]

Craddock demonstrates, however, that he also pursued his claim regarding the alleged invalid indictment in separate collateral proceedings challenging his sentence.[21]   The record shows that he raised this claim in the district court by motion to correct or vacate an illegal sentence.[22]   The state district court denied the claim without stated reasons.[23]   The Louisiana

---

[17]State Rec., Supplemental Vol. 1 of 4, Uniform Application for Post-Conviction Relief signed April 26, 2011.

[18]State Rec., Supplemental Vol. 1 of 4, District Court Order of May 4, 2011 denying PCR.  While the state district court's decision did not reference any particular subsection of article 930.4, the claims are barred in any event pursuant to article 930.8.

[19]State Rec., Supplemental Vol. 1 of 1, *State v. Craddock*, 2011-KW-1123 (La. App. 1st Cir. 8/29/11).

[20]*State ex rel. Craddock v. State*, 2011-KH-1989 (La. 2/3/12), 79 So.3d 1026.

[21]Rec. Doc. No. 30, Petition, pp. 12-16 (attached to Motion to Amend).

[22]State Rec., Supplemental Vol. 1 of 4.  The motion was signed on September 23, 2010.

[23]*Id*, District Court Order signed September 29, 2010.

First Circuit and the Louisiana Supreme Court denied the related applications without stated reasons.[24]  Therefore, this claim does not appear to be subject to the procedural bars imposed in the state court proceedings denying relief on his third post-conviction relief application.[25] For this reason, Claim 8 challenging the indictment will be considered on the merits.

The last reasoned decision of the state courts barred review of Claims 4 and 5 pursuant to state procedural rules.  Craddock does not argue that Louisiana Code of Criminal Procedure article 930.4 or 930.8 should not be considered adequate or independent state bars to prevent federal review of his claims.  Both articles 930.4 and 930.8 qualify as independent and adequate rules to support a procedural bar in federal court.  *See Bordelon v. Terrell*, Civ. Action No. 08-1931, 2010 WL 3325665, at *12 (W.D. La. Aug. 9, 2010) (claim barred under procedural default doctrine pursuant to La.C.Cr.P. art. 930.4 E); *Washington v. Cain*, Civ. Action No. 98-0584, 2000 WL 863980, at *3-4 (E.D.La. June 27, 2000) (same);  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997) (La. C.Cr.P. art. 930.8 provides an independent and adequate state ground for rejecting a PCR application); *see also Morris v. Cain*, Civ. Action No. 06–30916, 2008 WL

---

[24]State Rec., Supplemental Vol. 3 of 4, *State v. Craddock*, 2010-KW-2111 (La. App. 1st Cir. 2/28/11); *State ex. rel. Craddock v. State*, 2011-598 (La. 2/3/12), 79 So.3d 1021.

[25]Petitioner reasserted this claim in his amended petition, which was allowed by Order reopening the case on August 15, 2012.  Although it appears a subsequent motion to amend was denied in part, Rec. Doc. No. 52, insofar as he was attempting to amend to raise a claim with regard to the invalid indictment, that claim arguably was already before the Court, and therefore will be addressed on the merits herein, in an abundance of caution. The undersigned notes that this renders moot petitioner's pending objections to the ruling on the motion to amend.

3876479 (5th Cir. Aug.20, 2008); *Pineyro v. Cain*, 73 Fed. App'x 10, 11 (5th Cir.2003); *Tolbert v. Cain*, Civ. Action No. 08–435, 2009 WL 1309851, at *2 (M.D.La. May 11, 2009); *Lott v. Travis*, Civ. Action No. 08–1390, 2008 WL 4964797, at *7–8 (E.D.La. Nov.18, 2008); *MacCracken v. Louisiana*, Civ. Action No. 07–9540, 2008 WL 2951214, at * 10 (E.D.La. July 25, 2008).

Craddock's federal claims are barred under the procedural default doctrine unless he can demonstrate "cause" for the default and prejudice resulting from the default, or show that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995)(citations omitted). "Cause" is " 'something external to the petitioner, something that cannot fairly be attributed to him' that impedes his efforts to comply with the procedural rule." *Moore v. Roberts*, 83 F.3d 699, 703 (5th Cir.1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 772, *quoting Coleman v. Thompson*, 501 U.S. at 753, 111 S.Ct. at 2566.  Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir.1992). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 486 (1986).  "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir.1996).

9

Craddock argues as cause to excuse his default that appellate counsel was constitutionally ineffective for failing to raise these alleged errors on direct review.[26] Although ineffective assistance of counsel can constitute cause sufficient to overcome a procedural bar, the ineffectiveness itself must rise to the level of a Sixth Amendment violation. *Romero v. Collins*, 961 F.2d at 1183. Moreover, because counsel's ineffectiveness in failing to preserve a claim for state court review will suffice as cause only if that ineffectiveness itself constitutes an independent constitutional violation, the allegation of ineffectiveness must first have been presented to and exhausted in the state court system like any other constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587 (2000).  Craddock has not urged these ineffective assistance claims as separate and distinct claims for relief in the state courts, and any attempt to do so now likely would be rejected as untimely in light of Article 930.8.  *Glover v. Cain*, 128 F.3d, 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125, 118 S.Ct. 1811 (1998); *Nobles v. Johnson*, 127 F.3d 409, 420-23 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845 (1998); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995). Thus, the Court is likewise barred from considering the allegations of ineffective assistance of counsel, absent which petitioner fails to establish cause for the procedural default of his fourth and fifth claims for relief. Without a showing of cause, the Court need not consider the element of prejudice. *Murray v. Carrier*, 477 U.S. at 494-95, 106 S.Ct. at 2649 (1986).

---

[26]Rec. Doc. No. 46, pp. 4-5.

10

Finally, Craddock may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997)(*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. at 496; *Glover*, 128 F.3d at 902 (5th Cir. 1997). To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D.Tx.1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

The record in this case fails to support any claim regarding his actual innocence on the underlying conviction.  Thus, Craddock has not established that the failure to entertain his defaulted claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

For these reasons, Craddock has failed to overcome the procedural bar to Claims 4 and 5.  These claims should be dismissed as procedurally defaulted.  As discussed below, the remaining claims should be denied on the merits.

11

**B.    *Merits determinations***

1.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

12

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have

held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have

independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has

explained:

> A state court decision is contrary to clearly established precedent if the state
> court applies a rule that contradicts the governing law set forth in the [United
> States] Supreme Court's cases. A state-court decision will also be contrary to
> clearly established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United States]
> Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and

footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has

explained:

> [A] state-court decision can involve an "unreasonable application" of this
> Court's clearly established precedent in two ways. First, a state-court decision
> involves an unreasonable application of this Court's precedent if the state
> court identifies the correct governing legal rule from this Court's cases but
> unreasonably applies it to the facts of the particular state prisoner's case.
> Second, a state-court decision also involves an unreasonable application of this
> Court's precedent if the state court either unreasonably extends a legal principle
> from our precedent to a new context where it should not apply or unreasonably
> refuses to extend that principle to a new context where it should apply.

*Williams v. Taylor*, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is

objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694; *see also Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), *cert. denied*, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

14

2.      Facts [27]

On August 13, 2004, N.J. (the victim, who was twenty-six years old at the time) was living with her father in St. Tammany Parish, approximately two to three miles from her uncle, Carlos Harris.  That morning, the victim received a phone call from her uncle, who wanted to see her.  The victim thought it involved a letter from her boyfriend, Allen Bell.  At that time, Bell was in jail, and the victim was forbidden to have any contact with him because of pending charges against her.

The defendant showed up at the victim's house and offered her a ride to Harris's house. The victim was somewhat acquainted with defendant since he had briefly dated one of her relatives several years earlier.

Defendant and the victim arrived at Harris's house between 9:00 and 9:30 a.m. The victim went inside and sat down near an old piano where she, defendant, and Harris proceeded to smoke a marijuana cigarette.   At trial, the victim admitted that she was involved in using marijuana and methamphetamine at this time; however, she denied any use of cocaine.

Harris and defendant kept telling the victim to take off her shoes and make herself more comfortable.  The victim testified at trial that this made her feel "weird" and although something told her to leave, she remained.  Defendant kept telling the victim that he had a surprise for her on the television in her uncle's bedroom.  The victim told defendant that she did not want to go into the bedroom.  Instead, she began straightening Harris's living room.

After defendant again made reference to something for her in Harris's bedroom, the victim went to see what it was.  Once inside the bedroom, the victim observed a powder on the television, which she figured was some type of narcotic.  Defendant appeared in the doorway of the bedroom.  Defendant grabbed the victim's hair from behind and held a knife to her throat. Defendant told the victim to do as she was told or he would kill her, adding that because she was a little person and he was a big man, it would not take much to kill her.

---

[27]The facts reproduced here were summarized by the Louisiana First Circuit Court of Appeal in its direct appeal opinion. State Rec., Vol. 4 of 4, *State v. Craddock*, 2007-KA-0123, at *2-5 (La. App. 1ˢᵗ Cir. June 8, 2007).

The victim testified that she tried to run and fight, but was not successful. The victim thought she could talk her way out of the situation, but defendant then told her to take off her clothing. As she undressed and watched defendant masturbate and begin to undress, the victim tried to run from the bedroom, but defendant hit her and they fought. Defendant then pinned the victim on the bed and forced her to perform oral sex on him, while he held a knife to her throat.

The victim testified that she kept screaming for her uncle, who did not enter the room, but turned the stereo louder to cover up her cries. Defendant then began vaginally raping the victim. Defendant stopped, and stated that she "wasn't wet enough." Defendant performed oral sex on the victim, and then began vaginally raping her again. While defendant raped her, he held the knife to her throat. Defendant ejaculated onto the victim's stomach, then wiped his hands on a nearby towel. Defendant then allowed the victim to get up so she could use the bathroom. As the victim stood up, she began to get dressed, telling defendant she did not want her uncle to see her naked. The victim then ran down the hallway and into the living room, where her uncle sat. Defendant followed the victim and blocked the door. An argument ensued between Harris and defendant regarding whether to let the victim outside. The victim then made it onto the porch and began running toward the road.

As the victim ran toward the road, she heard a truck coming and flagged it down. The truck, driven by Charles Singletary, stopped and provided the victim a ride back to her father's house. Singletary and the victim were distant relatives. Singletary testified at trial that the victim was hysterical and crying when he picked her up.

The victim testified that once she got home, she sat in the bathtub for about two hours and "just scrubbed and scrubbed." A friend stopped by and found her crying in the bathtub and contacted the victim's mother and grandmother. The victim testified that she was reluctant to report the rape because defendant had threatened to kill her and her whole family. The police arrived at her home where the victim made an initial report. She was then taken to the emergency room of Slidell Memorial Hospital.

Dr. Archie Tatford, who was accepted by the trial court as an expert in emergency medicine, treated the victim. Dr. Tatford noted that the victim had a bruise on her breast and mild abrasions at the opening of her vaginal vault. The findings of Dr. Tatford's physical exam were consistent with her history of

16

having been raped earlier that day.

Detective Donna Madere, formerly of the St. Tammany Parish Sheriff's Office, met the victim at the hospital and collected the rape kit that had been completed by the medical personnel.  Detective Madere noted that the victim was very upset and reported defendant had raped her while he held a switchblade.  Based on the information gathered from the victim, Detective Madere obtained an arrest warrant for defendant.  Defendant could not immediately be located. Defendant was later arrested in Mississippi and extradited to Louisiana in April 2005.

Defendant testified on his own behalf.  According to defendant, on August 12, the day before the incident, Harris called him and asked him to get some marijuana and "crystal meth."  Defendant obtained these drugs plus some additional "crystal meth" for himself, which defendant claimed he used as a truck driver.  Defendant then delivered the drugs to Harris's house.  Later that evening, the victim came by, and smoked marijuana, drank beer, and ingested "crystal meth" with he and Harris.  At some point in the evening, Harris began grabbing the victim's breast.  The victim was angry and wanted to leave. Defendant testified that he and Harris drove the victim home.  When they returned to Harris's house, they kept "partying," which included smoking dope and drinking beer.

The next morning, at approximately 7:30 a.m., the victim called and wanted to come over and party.  Defendant claimed that he did not want to pick her up because he had been up all night and did not want to risk a DWI and lose his commercial driver's license.  At about  9:15 a.m., the victim called again to find out if they were going to come and get her.  Defendant and Harris agreed and drove over to the victim's house to get her.  According to defendant, he and the victim smoked a joint in the truck.  Then the victim stated she wanted some crack cocaine.  At first, defendant refused; but the victim stated she knew where to get it, and Harris said he wanted some, too.  Defendant stated they went to a place "known highly for drugs" and purchased a gram of crack cocaine for $50.00.  The three returned to Harris's house, and the victim said she wanted some crack.  Defendant testified that he asked her how she was going to pay for it since she had no money.  Defendant claimed the victim offered to have sex with him in exchange for the drugs.  Defendant agreed and gave her the cocaine, after which he and the victim engaged in consensual sexual relations.

17

Defendant stated that following their sexual intercourse, the victim wanted more crack, but he refused to take her to get more. Defendant claimed the victim threatened him, they argued, and the victim left. Defendant stated he left Harris's home soon thereafter. Defendant admitted a 1983 convicted for aggravated assault with a knife, and a 1990 conviction for possession of crack cocaine.

3.      Petitioner's Claims

(a)      **Claim 1 - Sufficiency of the evidence**

Craddock argues the evidence was insufficient to support his conviction for aggravated rape, because the State did not establish that the sexual intercourse was not consensual.[28] On direct appeal, the Louisiana First Circuit rejected Craddock's insufficiency claim, holding:

> The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); La.Code Crim. P. art. 821.

> Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. La. R.S. 14:41(A). Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however, slight, is sufficient to complete the crime. La. R.S. 14:41(B). Louisiana Revised Statutes 14:42 defines aggravated rape, in pertinent part, as:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one of the following circumstances:
> ....

---

[28]Rec. Doc. No. 6, p. 5.

(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.

In his brief to this court, defendant argues that the State's evidence was "gravely insufficient" to support his conviction for aggravated rape. In support of this argument, defendant then summarizes the content of his trial testimony. Defense counsel makes no effort to discuss the victim's testimony.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Taylor**, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

It has long been held that the testimony of the victim is sufficient to establish the elements of the offense. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Glynn**, 94-0332, p. 32 (La. App. 1 Cir. 4/7/95), 653 So.2d 1288, 1310, <u>writ denied</u>, 95-1153 (La. 10/6/95), 661 So.2d 464.

The guilty verdict in the present case indicates that the jury accepted the victim's testimony that she was vaginally raped and forced to perform oral sex by the defendant while he was armed with a knife. Viewing the evidence in the light most favorable to the prosecution, we conclude that the State proved beyond a reasonable doubt that the defendant was guilty of aggravated rape. This assignment of error is without merit. [29]

The Louisiana Supreme Court then denied Craddock's related writ application without assigning additional reasons. [30]

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an

---

[29]State Rec., Vol. 4 of 4, *State v. Craddock*, 2007-KA-0123, at *5-6 (La. App. 1st Cir. June 8, 2007) (emphasis in original).

[30]*State v. Craddock*, 972 So.2d 1161 (La. 1/11/08).

insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*, 443 U.S. at 319; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir.2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U.S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, ––––, 130 S.Ct. 665, 672-674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' "*Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U .S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995). Therefore, this Court must defer to the state court's decision rejecting the insufficiency claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

As correctly noted by the court of appeals, the elements of the crime were clearly established through the testimony of the victim.   The victim's testimony alone is constitutionally sufficient to support the instant conviction. *Peters v. Whitley*, 942 F.2d 937, 941–42 (5th Cir.1991); *see also Fetterley v. Whitley*, No. 94–30310, 1994 WL 708655, at * 1 n. 6 (5th Cir. Dec.6, 1994); *Crumholt v. Cain*, Civ. Action No. 11–2543, 2011 WL 6329934, at *8 (E.D. La. Nov.29, 2011), *adopted*, 2011 WL 6329868 (E.D. La. Dec.19, 2011); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *26 (E.D. La. Oct.29, 2009). Moreover, although petitioner disputes the victim's credibility, witness credibility is an issue for the jury, not a

21

federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief. *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[U]nder *Jackson [v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ], the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the *Jackson* standard for habeas relief."); *Phillips v. Cain*, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. Apr.11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For the reasons stated by the Louisiana First Circuit, the evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find Craddock guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### (b)    Claim 3 - Denial of right to a speedy trial

Craddock argues that his right to a speedy trial was violated when he was not brought to trial within 120 days of his arrest as required by Louisiana Code of Criminal Procedure

article 701.[31]   On direct appeal, the First Circuit rejected Craddock's claim under state procedural law, and found no violation of Craddock's constitutional right to speedy trial.[32] The Louisiana First Circuit applied the law set out in *Barker v. Wingo*, 407 U.S. 514 (1972), and denied the claim, finding that the fifteen-month delay between indictment and trial was not presumptively prejudicial, the delay was attributable to the defendant, and he failed to establish prejudice.

Craddock's claim must be rejected insofar as it argues that his prosecution and conviction violated Louisiana procedural law. Even if he could establish a violation of state law, this kind of claim does not warrant federal *habeas corpus* relief. A federal court does "not sit as [a] 'super' state supreme court in a *habeas corpus* proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted); *see also Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (federal *habeas* review does not lie for errors of state law); *accord Molo v. Johnson*, 207 F.3d 773, 776 n. 9 (5th Cir.2000); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.1998) (*citing Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir.1996)); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir.1997) (a disagreement as to state law is not cognizable on federal *habeas* review). *Habeas corpus* review is limited to questions of

---

[31]Rec. Doc. No. 6, p. 19.

[32]State Rec., Vol. 4 of 4, *State v. Craddock*, 2007-KA-0123, at *7-9 (La. App. 1st Cir. 6/8/07).

23

constitutional dimension, and federal courts generally do not review questions of state law. *Estelle*, 502 U.S. at 67–68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir.2011); *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992).

Federal consideration of a claim that a state has violated its own speedy trial rules is limited to a determination of whether the state's action has violated petitioner's constitutional right to a speedy trial or to due process. *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir.1987). To the extent petitioner's claim may be construed as alleging a federal constitutional violation, however, it should be denied on that basis as well.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial [.]" U.S. Const. amend. VI. The Supreme Court has adopted a balancing test for determining whether a delay between arrest or indictment and trial violates the Speedy Trial Clause. Under this test, the Court must balance four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The length of delay and reason for delay factors are closely related. *Id*. at 531. As the Supreme Court has explained:

> [The length of delay factor] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay

24

> stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because ... the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citations omitted); *see also Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

Although there is no bright-line rule and the delay must be considered in light of the circumstances and complexities of the individual case, delay generally becomes presumptively prejudicial as it approaches one year. *Cf. Doggett*, 505 U.S. at 652 n. 1.  The United States Fifth Circuit Court of Appeals has held that a delay of one year after indictment is a presumptively prejudicial delay that triggers *Barker* speedy trial analysis. *United States v. Lucien*, 61 F.3d 366, 372 (5th Cir.1995); *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir.1993).  "Once a speedy trial analysis is triggered, the Court 'determines whether the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is presumed.' " *United States v. Bishop*, 629 F.3d 462, 465 (5th Cir.2010) (*quoting United States v. Frye*, 489 F.3d 201, 209 (5th Cir.2007)). In the absence of such a presumption, the defendant must affirmatively demonstrate prejudice. *See United States v. Molina–Solorio*, 577 F.3d 300, 307 (5th Cir.2009).

The first factor does not weigh in Craddock's favor.  In this case, the delay between indictment and trial was about fifteen months.  While this is a sufficient delay to trigger an

25

inquiry into the *Barker* factors, it is certainly much less than the delays which courts have recognized as creating a strong presumption of prejudice. *See, e.g., Doggett*, 505 U.S. at 652 (over 8 years); *Barker*, 407 U.S. at 533 (over 5 years).  In fact, the Fifth Circuit has held that delays of less than five years cannot alone support a presumption of prejudice.  *United States v. Reagan*, 725 F.3d 471, 487 (5th Cir. 2013), *citing United States v. Parker*, 505 F.3d 323 (5th Cir.2007) (finding seventeen-month period was not long enough to presume prejudice).  Thus, no presumption of prejudice exists in this case based on the fifteen-month delay.

In weighing the second and third factors, the Louisiana First Circuit noted that although defendant was diligent in asserting his right by filing several speedy trial motions, the delay in bringing the matter to trial was attributable to the defendant, not the State.  In analyzing the reason for the delay in this case, the court of appeal stated:

> The record indicates the indictment charging defendant with aggravated rape was filed on June 8, 2005.  Defendant filed his first pro se motion seeking a speedy trial under Article 701 on July 20, 2005.  On August 11, 2005, defendant filed a motion to recuse the district attorney.  On August 19, 2005, defendant filed several motions including a motion for a **Prieur** hearing, a motion to suppress confession, a motion to suppress evidence, a motion to suppress identification, and a motion for discovery.
>
> Defendant's trial was originally scheduled for September 19, 2005.  On that date, defendant obtained a motion for continuance.  Meanwhile, on October 4, 2005, defendant filed a second pro se motion seeking a speedy trial under Article 701.  On motions by defendant, the trial court granted continuances of the pre-trial motions on November 2, 2005, and November 14, 2005.
>
> On January 23, 2006, defendant withdrew his motion to recuse the district attorney and obtained another continuance of his pre-trial motions.  The trial court granted defendant's requests for continuances of his pre-trial motions on

February 13, February 21, March 20, and April 12, 2006.[33]  On May 15, 2006, the trial court set defendant's trial for September 11, 2006.

On August 11, 2006, the trial court held a hearing on defendant's speedy trial motions and denied the motions.  Defendant sought review of that decision from this court.   In **State v. Craddock**, 2006-160 (La. App. 1 Cir. 8/31/06) (unpublished), this court denied defendant's writ application on the showing made.  On September 11, 2006, defendant's trial commenced.

It is obvious from the record that the delays in bringing this matter to trial rest entirely with defendant and his continued requests for continuances of his pre-trial motions.  Under these circumstances, we cannot say these delays are attributable to the State.[34]

"Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir.1994), *citing Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.  In this case, the record shows the delay is attributable to the defendant, not the State.

Finally, the prejudice factor weighs against any finding of a speedy trial violation in this case.  To prevail on this factor, Craddock must demonstrate actual prejudice.  *Serna-Villarreal*, 352 F.3d at 230-31.  The Supreme Court has explained that "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory

---

[33]On February 17, 2006, defense counsel filed this motion for speedy trial.

[34]State Rec., Vol. 4 of 4, *State v. Craddock*, 2007-KA-0123, at *7-8 (La. App. 1st Cir. June 8, 2007) (footnote in original).

evidence. Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Doggett*, 505 U.S. at 654 (citations omitted) (*quoting Barker*, 407 U.S. at 532) (alternation in original). When "the portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim," the presumption of prejudice grows stronger and therefore the defendant's need to demonstrate actual prejudice diminishes. *Id*. at 658.

Craddock argues that his defense was impaired because he lost the opportunity to present an exculpatory witness, Carlos Harris, who died before trial.[35]  However, as the court of appeal correctly found, he has not shown that Harris's testimony would have been favorable. Harris gave a voluntary taped statement to police about the incident before he died.[36] Any claim by petitioner that Harris's testimony could have discredited the victim's testimony is speculative, and is not supported by Harris's statement.  Craddock points to Harris's statement where he says he heard the victim call out to him, but it did not sound like a scream or like she was in trouble.  However, in his statement Harris also says that later as the victim was

---

[35]The Court notes that the state court record contains a defense "Motion for Subpoena Duces Tecum," which indicates that Harris died in August 2005, only one month after petitioner was indicted.  The initial trial date in this case was scheduled for September 2005.  Thus, Harris would not have been available for even the earliest trial date.  However, this Court has no evidence of his actual date of death, so it will proceed on the assumption that Harris died sometime between the first and second trial dates.

[36]A copy of the statement is contained in the state court record in Vol. 4 of 4. Petitioner attached it to his first state post-conviction relief application.  He also submitted it as an attachment to his federal *habeas* petition, Rec. Doc. No. 6, Exhibit 1, p. 23.

attempting to leave his house, Craddock held the door shut and would not allow her to leave until Harris insisted.  Harris said Craddock told the victim, "I'll let you go Bitch but you better not run."   They followed her outside and the victim started to run.  Petitioner said he was going to go after her, and drove off in his truck.

Craddock cannot show based on Harris's account that he suffered actual prejudice by not being able to present Harris as a witness at trial.   In fact, it appears Harris's testimony could well have been more detrimental than beneficial to Craddock's case.  Thus, Craddock has failed to establish any prejudice from the delay.  Petitioner is not entitled to *habeas* relief on this claim.

### (c)        Claim 7 - Ineffective assistance of counsel

Craddock claims defense counsel was ineffective for failing to introduce Carlos Harris's statement at trial.  The state courts rejected this ineffective assistance claim on the merits.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir.2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir.2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. *Id.*, 466 U.S. at 697. The

29

Supreme Court held first that, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. A *habeas corpus* petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' ... But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.1994) (*quoting Strickland*, 466 U.S. at 693); *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 792 (2011) (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On *habeas* review, the United States Supreme Court has recently clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of the AEDPA:

The standards created by *Strickland* and § 2254(d) are both "highly deferential,"

and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Harrington, 131 S.Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen v. Pinholster*, ––– U.S. ––––, 131 S.Ct. 1388, 1403 (2011) (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690.

Federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir.2008). In assessing counsel's performance, a federal *habeas* court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal v. Puckett*, 286 F.3d 230, 236–37 (5th Cir. 2002); *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir.2000), *cert. denied*, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.1999), *cert. denied*, 528 U.S. 1013 (1999) (*citing Rector v. Johnson*, 120 F.3d 551, 564 (5th

31

Cir.1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir.1994)).

In this case, the record reflects that defense counsel made a tactical decision based on objectively sound trial strategy not to introduce Harris's statement.  During trial, a discussion was held with the trial court regarding Harris's statement. [37] Both sides conceded the statement was hearsay.  However, the State offered to allow the admission of the statement if defense counsel wanted to introduce it.  Defense counsel declined the State's offer to allow the statement into evidence, stating he did not intend to use the statement.

Craddock fails to show that Harris's statement would have helped his defense.  Moreover, as previously discussed, the statement could easily have supported the victim's testimony and been detrimental to his case (a possibility amply demonstrated by the State's offer to waive any hearsay objections to the statement).  Petitioner has not shown either that his counsel performed deficiently or that prejudice resulted.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, *Strickland*.

### (d)     Claim 8 - Invalid indictment

Craddock claims his conviction and sentence are based upon an invalid indictment that identified the victim only by initials.[38]  The state courts rejected this claim on the merits without stated reasons.

---

[37]State Rec., Vol. 2 of 4, Trial Transcript, pp. 212-215.

[38]State Rec., Vol. 1 of 4, Grand Jury Indictment.

32

As to petitioner's argument that the indictment failed to comply with the requirements of Louisiana law regarding the identity of the victim, a federal court does "not sit as [a] 'super' state supreme court in a *habeas corpus* proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir.1994) (quotation omitted).  In this case, the Louisiana Supreme Court rejected petitioner's argument that the indictment violated state law. The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction ... [and] this can be determined only by looking to the law of the state where the indictment was issued." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985) (citation and quotations omitted); *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir.1969). Resolution of such an issue on federal *habeas* review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case...." *Id.* (quotation and citation omitted); *Murphy*, 416 F.2d at 100 ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

Review of this decision is precluded.  Even if it were not, the indictment was sufficient under Louisiana law. The Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." La. C.Cr. P. art. 464. The referenced article further provides

33

that an indictment shall cite the relevant statute which the defendant is alleged to have violated, but that error in this citation or even failure to do so will not render the indictment invalid. *Id.*  It is not essential that the date, time or place of the offense be stated with particularity. La. C.Cr. P. arts. 468–69. In providing the identification of the victim, when an offense is committed against a person, the indictment "shall state the true name of the victim," but if the name is not known, "may describe him as far as possible." La.C.Cr.P. art. 473. Louisiana law expressly authorizes the use of specific short form indictments in charging certain offenses, including aggravated rape, as follows: "Aggravated Rape-A.B. committed aggravated rape upon C.D." La. C.Cr.P. art. 462; La. C.Cr.P. art. 465 (A)(39); *see also State v. Liner*, 373 So.2d 121, 122 (La.1979) (recognizing the validity of Louisiana's short form indictment).[39]  The indictment form in this case complied with Louisiana law. It gave Craddock sufficient notice of the statutory provision that he was accused of violating, the date of the offense charged, and the identity of the victim.

Furthermore, this Court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the

---

[39]Louisiana Revised Statute § 46:1844(W)(1)(a) prohibits "all public officials and officers and public agencies, including but not limited to all law enforcement agencies, sheriffs, district attorneys, judicial officers, clerks of court" in Louisiana from "publicly disclos[ing] the name, address, or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age or of victims of sex offenses." Instead, Louisiana law leaves the disclosure of the victim's identity to the pretrial discovery process pursuant to Louisiana Revised Statute §46:1844(W)(4).

underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.1986).   The United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy. *United States v. Debrow*, 346 U.S. 374 (1953). The short form indictment used in this case and authorized by Louisiana law provided the necessary due process protections.  *Liner v. Phelps*, 731 F.2d 1201 (5th Cir.1984); *Brown v. Cain*, 2001 WL 96410 (E.D.La. Feb. 2, 2001). The indictment in this case was proper and alleged sufficient facts to apprise Craddock of the charges against him.   The details provided in the indictment complied with the test for constitutional sufficiency established by the Supreme Court.   Craddock is not entitled to *habeas* relief on this claim.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Calvin Lee Craddock's petition for issuance of a writ of *habeas corpus* under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d

1415, 1430 (5th Cir.1996)(*en banc*)(citing 28 U.S.C. §636(b)(1)).[40]

New Orleans, Louisiana, this 17th day of ____April____, 2014.

_____

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

_____

[40]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.